**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| CANDICE L. JOYNER<br>1952 West 50th Street<br>Cleveland, OH 44102 | )<br>)<br>)<br>) | CASE NO. |
| Plaintiff | )<br>) | JUDGE |
| -vs- | )<br>) | |
| I CAN SCHOOLS, INC.<br>21100 Southgate Park Blvd<br>Maple Heights, OH 44137 | )<br>)<br>)<br>) | **C O M P L A I N T** |
| and | )<br>) | |
| ACCEL SCHOOLS OHIO, LLC<br>Aka Pansophic Learning<br>Fka I Can Schools, Inc.<br>4700 Rockside Road<br>Independence, OH 44131 | )<br>)<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| ACCEL SCHOOLS OHIO, LLC<br>Care of Statutory Agent<br>CORPORATION SERVICE COMPANY<br>50 West Broad Street<br>Columbus, OH 43215 | )<br>)<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| MARSHALL EMERSON, III<br>In his individual capacity and in his<br>capacity as Co-Founder and<br>Chief Executive Officer<br>21100 Southgate Park Blvd<br>Maple Heights, OH 44137 | )<br>)<br>)<br>)<br>)<br>)<br>) | |

|  |  |  |
|---|---|---|
| and | ) | |
| | ) | |
| TEMEKA BRANTLEY | ) | |
| In her individual capacity and in her | ) | |
| capacity as Chief Operations Officer | ) | |
| 21100 Southgate Park Blvd | ) | |
| Maple Heights, OH 44137 | ) | |
| | ) | **JURY TRIAL REQUESTED** |
| Defendants. | ) | |

## NATURE OF THE ACTION

1. This is a civil rights action brought under 42 U.S.C. §§ 1983, 1985(3) and 1986. This action is also brought under 29 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and O.R.C. § 4112. Plaintiff further asserts state law breach of contract, promissory estoppel, defamation and intentional infliction of emotional distress claims.

2. While the individual Defendants were acting within the scope of their employment and under the color of state law, they unlawfully discriminated against Plaintiff resulting in the denial of their rights and benefits of their employment based upon their medical handicap or condition, gender and the creation of a hostile work place.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343 and 1367.

4. This Court has personal jurisdiction over Defendants and venue is conferred on this Court in the Southern District of Ohio by 28 U.S.C. § 1391 because the facts giving rise to Plaintiff's claims took place within the jurisdiction of the US District Court for the Northern District of Ohio.

## PARTIES

5. CANDICE L. JOYNER is an African-American female citizen of the United States and a resident of the city of Cleveland, Cuyahoga County, State of Ohio. Plaintiff was at

2

all times herein relevant an employee of I Can Schools (hereinafter referred to as "I CAN").

6. Defendant I CAN is a tax-exempt nonprofit corporation, incorporated under the laws of the State of Ohio, that has contractual relationships with certain community schools (also called "charter schools") in the State of Ohio, I CAN receives state and federal tax money and grants. I Can Schools and its' assets and liabilities were turned over to Defendant, Accel Schools of Ohio, LLC, on or about March 3, 2017.

7. Marshall Emerson, III, is the Co-Founder and CEO of I Can.

8. Temeka Brantley was the Chief Operations Officer for I Can.

**COUNT ONE - DISCRIMINATION, ADA VIOLATIONS**

9. Candice L. Joyner was hired by Marshall Emerson, III, Co-Founder and CEO of I Can and was employed as a salaried employee, under contract, beginning in August 2011 and up to and including September 30, 2015 by Defendant I CAN.

10. Joyner continued said employment from on or about August 2011, until her unilateral Administrative Suspension by I Can on May 7, 2015, and until her actual discharge from employment by I Can on May 25, 2015, alleging this Plaintiff's personal involvement in unlawful activities against her employer.

11. Joyner was never provided with any written confirmation, Notice of Administrative Suspension or Termination of Employment signed by any official or employment supervisor I CAN.

12. During her employment, Candice L. Joyner, upon learning of her medical and physical diagnoses and illness, promptly informed her employer of her non-contagious, health-related illness - Lupus and Fibromyalgia, with accompanying medical - physical disabilities, by and through her immediate supervisor, Temeka Brantley, COO (hereinafter "Brantley"), and also

Marshall Emerson, III, I CAN Co-Founder and CEO, (hereinafter "Emerson") . Emerson and Brantley are named as Defendants in this cause.

13. Joyner also timely advised her employer of her needs for frequent medical attention and treatment, requiring absence from work, for which she timely requested permission and leave, while continuing to perform and complete her work duties and assignments. Joyner confirmed her medical treatments and appointments providing her employer with her treating physician's written communications and clinical summaries.

14. On numerous occasions, Joyner also timely requested her employer for reasonable employment accommodations, under the provisions of Title I of the Americans with Disabilities Act of 1990, as amended (ADA), for her severe physical and medical conditions, and for her needs to dress accordingly to disguise and conceal certain physical conditions from view.

15. Temeka Brantley, Defendant, failed and refused to acknowledge Joyner's illness and disabilities, harassing Joyner, taunting and deprecating her regarding her personal hygiene, appearance and dress, frequently criticizing Joyner regarding Joyner's job performance, adding more work and duties, thereby needlessly and unlawfully creating and imposing upon Joyner a physically and emotionally destructive, harassing work environment for this employee, and refusing to provide any reasonable ADA accommodation requested by this employee, contrary to law.

16. Joyner's appeal and request was also made directly to Emerson, Defendant, who agreed to provide reasonable accommodations for Joyner, but thereafter failed to intercede or ameliorate, and refused to implement any requested accommodations.

17. With the passing of time, and with no cessation of continued harassment by Brantley, and when Brantley and Emerson repeatedly and continually failed to implement or

4

consent to any reasonable work accommodations for Joyner, in violation of Title I of the Americans with Disabilities Act of 1990, as amended (ADA), Joyner received her Notice of Suit Rights on or about February 13, 2017 attached hereto as **EXHIBIT "A"**.

18. The Employer's Counsel and legal representatives refused to accommodate, resolve, or mediate Joyner's claims and Complaint before the Ohio Civil Rights Commission, whereupon the matter was referred and assigned for Federal investigation by Deanna Jackson, OCRC Mediator.

19. Defendant, I Can Schools, and Defendants Brantley and Emerson unlawfully discriminated against Joyner, an educated, skilled, and qualified employee with disclosed medical and physical disabilities, who was fully qualified for her position and employment, and who performed her assigned duties timely and fully, despite such disabilities and whereby said discriminatory acts and conduct by I Can and Defendants Brantley and Emerson were in violation of the Act, all to the detriment, harm and loss of Joyner, who demands compensatory damages and punitive damages against I Can, Brantley and Emerson, jointly and severally, with prejudice, in the amounts stated at the end of these Complaint.

## COUNT TWO - FLSA VIOLATIONS

20. Joyner, an hourly employee of Plaintiff I Can, was an hourly employee under an employment contract from August 2011 to September 30, 2015.

21. During said term of employment and until wrongful termination of her employment on May 25, 2015 Joyner, appointed as I Can's "Operations Manager" performed Payroll, Employee Benefits, Insurance, Board Meeting Agendas and set-ups, and all school audits for the seven (7) individual schools in the I Can Schools system and its

affiliated entities and activities, namely:

    **(a)**     **FRIENDS OF I CAN**
    **(b)**     **I CAN SCHOOLS, INC.**
    **(c)**     **CLEVELAND COLLEGE PREPARATORY SCHOOL**
    **(d)**     **NORTHEAST OHIO COLLEGE PREPARATORY SCHOOL**
    **(e)**     **UNIVERSITY OF CLEVELAND PREPARATORY SCHOOL**
    **(f)**     **LAKE ERIE PREPARATORY SCHOOL**
    **(g)**     **OHIO COLLEGE PREPARATORY SCHOOL**
    **(h)**     **AKRON PREPARATORY SCHOOL**
    **(i)**     **CANTON COLLEGE PREPARATORY SCHOOL**
    **(j)**     **100% MY KIDS**

22. Joyner worked more than 40 hours each week, as required by her assigned duties by Brantley and Emerson, but was not fairly or properly compensated by the employer for her overtime work and services, as a "non-exempt" employee, as required under the provisions of the Fair Labor Standards Act, (FLSA), which were fully applicable to this employee.

23. Joyner demands compensatory and punitive damages against I Can for all overtime hours worked during her employment at the full rate of 1-1/2 times her hourly wages, all as prescribed by the Act, and as also stated at the end of these Counterclaims, and for such other and further awards at law and equity as this Honorable Court shall find, make and order.

### COUNT THREE - WRONGFUL TERMINATION OF EMPLOYMENT

24. Throughout her entire employment with I CAN, Joyner was neither reprimanded nor suspended, in writing documented, for any cause.

25. At all times during her employment Joyner, although afflicted with Lupus and Fibromyalgia, performed her assigned duties diligently, earnestly, honestly and intelligently, with complete dedication to her employer, despite her medical and physical disabilities.

6

26. I Can had and have no probative, admissible evidence or testimony to support any of its claims against Joyner.

27. Only after Joyner had filed her EEOC Complaint for her employer's failure and refusal to provide any reasonable ADA accommodations requested, did I CAN suspend Joyner and thereafter terminate her employment, wrongfully and in retaliation, for all of which Joyner demands judgment against Plaintiff I CAN, Brantley and Emerson, for compensatory and punitive damages, jointly and severally, with prejudice, against I CAN, Brantley and Emerson, in the amounts set forth at the end of this Complaint.

## COUNT FOUR - BREACH OF CONTRACT OF EMPLOYMENT

28. I CAN employed Joyner as its Operations Manager, on a contract basis, beginning in 2014 and continuing until September 30, 2015, at an annual salary of $52,000.00.

29. I CAN breached its contract of employment with Joyner by early termination, without cause, on May 25, 2015, four (4) months and five (5) days= 125 days, prematurely, for all of which Joyner demands judgment against Plaintiff I CAN, Brantley and Emerson, for compensatory and punitive damages, jointly and severally, with prejudice, against I CAN Brantley and Emerson, in the amounts set forth at the end of this Complaint.

## COUNT FIVE - WRONGFUL RETALIATION

30. I CAN's termination of Joyner's employment, in retaliation for Joyner's having retained legal counsel to assist with her filing her ADA claims, and in retaliation for Joyner's suspected activity in "leaking" information regarding collective bargaining activities to the media, as a "whistleblower", and for wage discrimination claims, are wholly unsupported with admissible, probative evidence in this cause, and are each contrary to Ohio's public policy protections, warranting dismissal, for all of which damage, harm and loss Joyner demands

judgment against Plaintiff I CAN, Brantley and Emerson, for compensatory and punitive damages, jointly and severally, with prejudice, against ISC, Brantley and Emerson, in the amounts set forth at the end of this Complaint.

### COUNT SIX - DEFAMATION - LIBEL SLANDER

31. I CAN charges against Joyner in a previous state court action, as mere allegations, published and spoken of Joyner were and are, without supporting admissible, probative evidence, libelous and slanderous, intended to damage and harm Joyner's professional reputation and standing in the education industry and community, for all of which damage, harm and loss Joyner demands judgment against I CAN, Brantley and Emerson, for compensatory and punitive damages, jointly and severally, with prejudice, against ISC, Brantley and Emerson, in the amounts set forth at the end of this Complaint.

### COUNT SEVEN – DURESS

32. ICS was, at all times pertinent herein, fully informed of Joyner's physical and medical health disabilities, and afflictions with Lupus and Fibromyalgia requiring frequent medical care and treatment.

33. I CAN, by and through its senior management, Defendants herein, failed and refused to provide any reasonable accommodations for Joyner's disabilities, and in so doing also assigned here additional duties, above and beyond her normal assignments.

34. I CAN's senior management personnel, Defendants herein, also frequently and repeatedly redressed Joyner for her appearance, clothing, dress, and personal hygiene habits, all of which caused Joyner severe physical and emotional distress, increased anxiety and duress, aggravating and intensifying Joyner's medical and physical conditions and disabilities, for all of which damage and harm Joyner demands judgment against I CAN,

Brantley and Emerson, for compensatory and punitive damages, jointly and severally, with prejudice, against I CAN, Brantley and Emerson, in the amounts set forth at the end of this Complaint.

### COUNT TEN - FALSE CLAIMS ACT VIOLATIONS

35. I CAN, by and through its Co-Founders, Directors, Management Officers, and Personnel have, upon belief, intentionally and knowingly made, used or caused to be made, certain false records and/or recorded statements material to their financial problems, necessitating salary freezes, termination of teacher employees, in aggressive opposition to the collective bargaining and lawful union organization of its employees, alleging insufficient Federal and State (Ohio) funding necessary for the continued operation of its seven (7) private charter schools.

36. I CAN's allegations are, upon belief, untrue when made, inasmuch as I CAN received and receives generous grants of Federal and State funds which it misused and failed to use and allocate prudently, resulting in improvident diminution of valuable funds and resources needed for the education and published enrichment activities for each of the enrolled 3,500 children in grades K-8 of ICAN's seven charter schools.

37. Plaintiff I CAN, and its Management Team knew and should have known that any false reporting, abuse, or misuse of granted Federal and/or State funds would warrant immediate scrutiny, investigation and appropriate action, including the reward to whistleblowers, under the False Claims Act, 31 U.S.C. §§ 3729-3733, for all of which Joyner demands judgment against I CAN, and its Management Team, including Brantley and Emerson, for compensatory and punitive damages, jointly and severally, with prejudice, in the amounts set forth at the end of this Complaint, together with such other and further

relief at law and equity as this Honorable Court shall make, find and Order in these presents.

**COUNT ELEVEN**

38. Due to defendant's wrongful employment practices, Plaintiff was harassed, denied wages, benefits and promotions, while other non-male, non African American employees with no more seniority or job experience and with no higher qualifications than Plaintiff, but who were not Plaintiffs gender or race did not similarly suffer from a hostile work environment nor were they denied their rights.

39. Defendants acted in a willful and wanton manner in discriminating against Plaintiff and Defendants took no steps to correct these practices even though they were brought to the attention of officials at all levels of I CAN.

40. These acts were because of Plaintiff's race and gender in violation of State and Federal law, as well as the common law.

41. As a proximate result of Defendants' severe and intentional acts of discrimination, Plaintiff suffered severe emotional distress, psychological damage, and the deprivation of their statutory and constitutional rights.

**COUNT TWELVE**

42. Plaintiff was retaliated against because she filed charges of discrimination against I CAN and Brantley in violation of State and Federal Law.

43. And, Defendants' intentional, willful, and wanton threats and harassment of Plaintiff was discriminatory and violates Ohio Rev. Code Sections 4112.02(A) through 4112.99.

**COUNT THIRTEEN**

44. Defendants created a hostile work environment for Plaintiff that adversely impacted their employment relationship and denied their rights, privileges, or immunities

secured by the Constitution and laws by using the rules, customs, usages of the I CAN Policies and Procedures to unfairly discipline, threaten, harass and disparage Plaintiff under the authority of a state of Ohio political subdivision.

45. And, Defendants denied Plaintiff, a citizen of the United States, their rights, privileges, or immunities under the color of regulations, customs, or usages, of I CAN, a political subdivision of the State of Ohio and subjected her to the deprivation of their rights, privileges, or immunities secured by the Constitution and laws, including but not limited to their constitutional rights to substantive due process and equal protection. Defendants are liable to Plaintiff in an action at law, suit in equity, or other proper proceeding for redress in an unknown amount to be determined at trial.

46. Defendant's intentional, willful, and wanton acts were discriminatory and also violate Ohio Rev. Code Sections 4112.02(A) through 4112.99.

47. Defendants acted with malice and ill will toward Plaintiff without regard for their legal rights and otherwise discriminating against her because of their race and gender.

48. As a direct and proximate result of Defendant's actions as set forth above, Plaintiff has suffered loss of compensation, loss of fringe benefits, loss of the opportunity to be able to continue the gainful employ in which he has been engaged for numerous prior years, loss of future earnings and loss of reputation, humiliation, embarrassment, loss of self esteem, adverse health effects and loss of time and money endeavoring to protect herself form Defendant's unlawful discrimination, including costs and reasonable attorneys fees in amounts to be proven in trial.

**COUNT FOURTEEN**

49. In an attempt to justify the discrimination, Defendants had several meetings in

which Plaintiff's performance was examined with defamatory and libelous statements designed to impugn Plaintiffs good name and reputation and this conduct was done wantonly and with malice.

50. Defendants engaged in the herein described conduct willfully, maliciously, outrageously, deliberately, purposely, recklessly and with the intent to cause Plaintiff severe and extreme emotional distress.

51. As a direct and proximate result of Defendants' conduct, Plaintiff incurred and continues to incur severe, extreme and grievous mental and emotional suffering, nervousness and anxiety, and such conduct violated common law.

## COUNT FIFTHTEEN

52. As a direct and proximate result of Defendants' conduct, Plaintiff incurred and continues to incur severe, extreme and grievous mental and emotional suffering, nervousness and anxiety which was or should have been reasonably foreseeable by the Defendants, and such negligent conduct violated common law.

## COUNT SIXTEEN

53. The treatment of Plaintiff by Defendants was in violation of express and implied contracts of employment, the breach of which constitute violations of common law.

54. By reason of this breach of express and implied contracts Plaintiff has suffered injury and damage, both economic and personal and also pain and suffering entitling her to compensatory and punitive damages from the Defendants in amounts to be prove at trial.

## COUNT SEVENTEEN

55. Defendants induced Plaintiff to work for Defendants knowing that conditions of discrimination existed at the work place that created a hostile work environment.

56. Defendants fraudulently induced Plaintiff to work for Defendants despite the fact that Defendants knew that the discriminatory conditions and hostile work environment that existed were in violation of statutory and common law.

## COUNT EIGHTEEN

57. Defendants failed to operate with good faith and did induce Plaintiff to continue contracting with Defendants to their detriment in violation of common law.

58. Defendants fraudulently induced Plaintiff to work for Defendants despite the fact that Defendant knew of the conditions that existed within the defendant in violation of common law.

## COUNT NINETEEN

59. Defendants' actions in publicly making or publishing false statements about Plaintiff have impugned their good name and reputation.

60. These false statements were made to support the Defendants' actions to unlawfully discriminate against Plaintiff.

61. As a direct and proximate result of Defendants' actions and inactions, Plaintiff has suffered, and will continue to suffer, loss of wages and benefits, emotional distress and embarrassment, and loss of reputation in amounts to be proven in trial.

## COUNT TWENTY

62. Defendants' intentional actions in publicly making or publishing false statements about Plaintiff were intended to impugn their good name and reputation for the purpose of having their employer terminate their employment or uphold the discriminatory acts that had been perpetrated against her.

63. The Plaintiff is not a public figure.

64. Defendants, when they made the false statements, had no qualified privilege protecting these statements.

65. Defendants made these false statements deliberately and maliciously or with reckless and wanton indifference to the truth that have damaged Plaintiff's professional reputation and her standing in the community.

66. As a direct and proximate result of Defendant's actions and inactions, Plaintiff has suffered, and will continue to suffer, loss of wages and benefits, emotional distress and embarrassment and loss of reputation in amounts to be proven in trial.

## COUNT TWENTY-ONE

67. During the time that Plaintiff has worked for I CAN the individual Defendants have met in private, secret sessions and discussed ways of harassing or terminating Plaintiff. At these meetings, communications, phone calls, text messages and face-to-face encounters Defendants still employed at I CAN conspired in order to further harass and discriminate against Plaintiff and deny her civil rights.

68. Consequently, the Defendants engaged in a conspiracy for the purpose of depriving, either directly or indirectly, Plaintiff of the equal protection of the laws, or of equal privileges or immunities of the laws; and performed acts in furtherance of the conspiracy; and, Plaintiff was injured in their person or property or deprived of rights or privileges of a citizen of the United States.

69. And, if some of the Defendants did not specifically engage in the conspiracy against Plaintiff they nonetheless had knowledge of the conspiracy and they, while acting with reasonable diligence, had the power to prevent or aid in preventing the commission of acts under

the conspiracy but neglected or refused to so do. Defendants engaged in this conduct because of Plaintiff's medical condition and handicap and gender.

70. Plaintiff states that the Defendants are in the direct chain of supervision over her and that all or some of these defendants utilized discriminatory promotion evaluations and that they retaliated against her for objecting to her disparate treatment.

71. Defendants possessed varying degrees of control over Plaintiff's working conditions are or were at all times herein relevant their direct supervisors who had the authority to hire, fire, promote, demote, suspend discipline and otherwise directly control their employment relationship with I CAN.

72. Plaintiff alleges that she was treated less favorably than their similarly situated employees.

73. In retaliation for objecting to discriminatory performance evaluations, the Defendants retaliated against her by placing her in a hostile work environment and preventing her from being promoted.

74. The Defendants acted as a result of Plaintiff's objections, the Defendants knew about Plaintiff's objections to the allegedly racially discriminatory performance evaluations, the Defendants knew that Hollinger had admitted being a racist.

75. Plaintiff opposed the discriminatory evaluations and non-promotion and Defendants knew this and continued to discriminate against Plaintiff.

76. Thus, Plaintiff has engaged in a protected activity and that the Defendants clearly knew of the activity.

77. As a direct and proximate result of Defendant's actions and inactions, Plaintiff has suffered, and will continue to suffer, loss of wages and benefits, emotional distress and

embarrassment and loss of reputation in amounts to be proven in trial.

**WHEREFORE**, CANDICE L. JOYNER, Plaintiff, prays for a judgment against I CAN Schools, Inc., and Defendants Temeka Brantley, COO and Marshall Emerson, III, Co-Founder and CEO, in their individual and official capacities respectively, for compensatory and punitive damages, jointly and severally, with prejudice, in an amount in excess of TWENTY-FIVE THOUSAND and 00/100 DOLLARS ($25,000.00), on each count and claim of the Complaint herein, together with all costs of litigation, reasonable Attorneys' fees, all costs of this action, and for such other and further relief at law and equity as this Honorable Court shall find, make and ORDER, and for interest on all judgments and awards at the legal rate, from the date of wrongful discharge of Defendant on May 26, 2015, and continuing until fully paid and satisfied. Any other equitable relief that the Court deems appropriate.

Respectfully Submitted,

/s/Robert C. Brooks II

Robert C. Brooks II, Sup. Ct. Reg. #0040881
1893 East 82nd Street
Cleveland, Ohio 44103
(216) 401-3869
(855) 218-8199 Fax
RBrooksii2000@gmail.com

**ATTORNEY FOR PLAINTIFF**

**JURY DEMAND**

Plaintiffs request a trial by jury pursuant to Federal Rules of Civil Procedure.

/s/Robert C. Brooks II

Robert C. Brooks II
Attorney for Plaintiff